**The McALESTER COCA–COLA BOTTLING COMPANY, Plaintiff in Error,**

v.

**J. D. LYNCH, Defendant in Error.**

No. 35994.

Supreme Court of Oklahoma.

Jan. 7, 1955.

Rehearing Denied Feb. 23, 1955.

Bell & Tucker, Robert J. Bell, Charles B. Tucker, McAlester, for plaintiff in error.

Hill & Nix, Counts & Dane, McAlester, for defendant in error.

O'NEAL, Justice.

Plaintiff below, J. D. Lynch, recovered a money judgment against the defendant below, the McAlester Coca-Cola Bottling Company, in an action for damages for injuries to his face and left hand resulting from the explosion of a bottle of Coca-Cola manufactured or processed by defendant and sold to Gobby's Cafe, and thereafter resold to plaintiff on or about March 28, 1950.

Plaintiff's action sounds in tort as well as an alleged breach of an express or implied warranty. To sustain plaintiff's cause

of action, based upon the alleged tort of the defendant, it was pleaded:

(1) That the injuries sustained by plaintiff were due solely to the carelessness, negligence and want of care of the defendant in using a defective bottle which had not been properly constructed;

(2) Was due to an improper mixing and composition of the Coca-Cola placed in said bottle; and

(3) To excessive pressure injected into the bottle in the manufacture of the product contained therein.

With reference to plaintiff's cause of action based upon the express or implied breach of warranty, plaintiff pleaded that the Coca-Cola bottle and contents were sold and delivered by defendant to Gobby's Cafe in violation of an express or implied warranty to the cafe and the public; that said soft drink had been properly compounded and placed in a bottle that was safe for human use.

The pivotal question for our decision is whether plaintiff has established one or more of the acts of negligence alleged to sustain the verdict in his favor, and the judgment rendered thereon.

The record discloses that on the 28th day of March, 1950, plaintiff purchased three bottles of Coca-Cola at a restaurant operated as "Gobby's Lunch or Cafe" in Hartshorne, Oklahoma. The purchase was made from Leona Wansick, an employee in the cafe. Plaintiff placed the three bottles on the front seat of his automobile and proceeded to drive toward his home. When he reached a point approximately one block east of the cafe, one bottle of the Coca-Cola burst and particles of glass injured plaintiff's face and left hand. Particles of glass were removed from plaintiff's face and hand by a local physician who testified that the tendons of plaintiff's left hand were permanently damaged.

Leona Wansick, who made the sale to plaintiff, testified that cases of Coca-Cola were from time to time delivered to the cafe by the defendant, and were stored in the rear of the cafe; that various employees of the cafe would remove the Coca-Cola bottles and place them in the cooler. She was unable to state in what manner these bottles of Coca-Cola were removed from the cases and placed in the cooler by other cafe employees.

Walter Gorham, the owner of the cafe, testified that the McAlester Coca-Cola Bottling Company of McAlester, delivered several cases of Coca-Cola to the cafe once or twice a week and they were stacked in the rear of the restaurant; that once or twice each day employees of the cafe would fill the cooler with Coca-Cola and other soft drink products; that ordinarily he or his father filled the cooler either in the morning or in the evening of each day, but he was unable to state whether the bottle in question had been placed in the cooler on the 28th day of March, or some days previous thereto.

Gene McBee testified that he operated the delivery truck of the defendant in the delivery of Coca-Cola to defendant's dealer in Hartshorne; that he delivered several cases of Coca-Cola to Gorham's Cafe on March 28, 1950; that he stacked the Coca-Cola cases in the rear of the Gorham restaurant; that his truck carries 146 cases of bottled Coca-Cola, and that he has observed bottles break during deliveries when the temperature stood at 100 degrees or above; that he has never observed a bottle burst during the months of March or April.

Upon cross-examination he stated that all empty bottles are examined by him prior to loading them upon his truck for return to the plant, and that any bottles appearing to be chipped, or otherwise injured, are removed and charged to the dealer. When the truck arrives at the plant the empties are re-examined by him for further defects and any injured bottle is then discarded. The bottles are then run through a washer and sterilized under steam pressure, after which they are re-examined by defendant's employees by the use of electric light bulbs. After the bottles are refilled they are again inspected in the same manner for observable defects.

Defendant contends that plaintiff's evidence wholly fails to sustain his contention that the injury sustained by plaintiff was

due solely to the carelessness, negligence and want of care in using a bottle which, had been improperly constructed and was due to an improper mixing of the composition of the Coca-Cola, or was due to the excessive gas pressure injected into the bottle by the manufacture thereof.

Defendant's demurrer to plaintiff's evidence in chief was overruled. Thereafter, defendant introduced evidence tending to establish that the defendant purchased its bottles from the Owens Illinois Glass Co., Chattanooga Glass Company and the Liberty Glass Company; that the bottles so purchased were of uniform specifications and standards prescribed by the United States Bureau of Standards. The bottles remain the property of the defendant and remain in use unless discarded for observed defects.

Defendant's manager testified that the driver of the delivery truck made the first inspection of the empty bottles when they were loaded for return to the plant. Another inspection was made when the bottles were unloaded at the plant. In each instance, bottles with chips or cracks, or other observed defects, were discarded and not further placed in use. In preparing bottles for refilling they are placed sideways in front of an electric light, and if defects are thus observed the bottle is discarded. The bottles are then run through a washer for cleansing and sterilization, after which another inspection is made of the bottles, and they are then filled with Coca-Cola and carbonated water at a pressure of 60 pounds to the square inch; that a pressure of 60 pounds is comparable to pressure employed by manufacturers of soft drinks generally by those engaged in the industry. After the bottles are capped they are again inspected with electric lights to discover either foreign matter or defects in the structure of the bottle.

A Chemist testified that he selected 24 Coca-Cola bottles at random at defendant's plant, and placed them upon a hydrostatic testing machine to determine the internal pressure the bottles would stand. The test disclosed the lowest bottle failed at 450 pounds pressure per square inch; the strongest bottle broke at 1245 pounds pressure per square inch; that the average of the 24 bottles tested failed or broke at a pressure of 694 pounds per square inch. He further stated that the continued use of a bottle did not affect its resistant strength, and that he had found that bottles would break from slight external blows.

Defendant renewed its demurrer and moved the court for a directed verdict, which demurrer and motion were overruled.

As indicated, defendant assumes the position that plaintiff's evidence, or the evidence in its entirety, does not establish the specific acts of negligence charged, and that plaintiff cannot rely upon the doctrine of res ipsa loquitur, as the latter plea is not applicable here for the reason that the undisputed facts disclose that the bottle of Coca-Cola was not under the care and control of the defendant at the time of the alleged accident and injury to plaintiff.

■ We concur with these contentions for the reason that plaintiff's evidence, with all reasonable deductions therefrom, does not establish the allegations of a want of ordinary care in the use of a defective bottle, or the use of a bottle that had not been properly constructed or inspected.

■ The evidence likewise fails to sustain plaintiff's contention that there was an improper mixing or composition of the Coca-Cola placed in the bottle, or that its contents was placed therein under excessive pressure. Furthermore, in the absence of evidence showing that the defendant was negligent, we hold that plaintiff was not entitled to recover on the theory of a breach of an implied warranty. Neither do we think that plaintiff, in the instant case, can rely upon the doctrine of res ipsa loquitur for the reason that plaintiff's cause of action was limited to specific acts of negligence, and he did not plead general acts of negligence under which the doctrine would become applicable. Bewley v. Western Creameries, 177 Okl. 132, 57 P.2d 859 and Billington Lumber Co. v. Cheatham, 181 Okl. 402, 74 P.2d 120. In the latter case, we held:

"If the nature of the accident out of which a personal injury arises is such that the doctrine of res ipsa loqui-

tur may apply, where the petition contains independent general allegations of negligence and allegations of specific acts of negligence the doctrine may be invoked in event no proof of the specific acts is forthcoming."

In the case at hand plaintiff relies solely upon specific acts of negligence. Moreover, as we have pointed out, the doctrine under the facts presented by this record is inapplicable. The rule thus announced is not in conflict with expressions found in the recent case of Independent Eastern Torpedo Co. v. Gage, 206 Okl. 108, 240 P.2d 1119. The question posed in that case was whether the proof of an explosion in defendant's nitroglycerin plant, standing alone, sustained a presumption of negligence sufficient to establish a prima facie case for recovery. We resolve that question in plaintiff's favor as there the instrumentality was under the exclusive management and control of the defendant at the time of the explosion and resulting injury to plaintiff's property. Moreover, the Independent Eastern Torpedo case was bottomed upon negligence in the manufacture of highly explosive commodities, to wit: nitroglycerin. We there pointed out that where plaintiff pleads a particular cause of an accident he in nowise loses his right to rely on the doctrine of res ipsa loquitur, *if the petition otherwise sufficiently states the cause of action,* then the specific allegations of negligence in the complaint are wholly immaterial.

The rationale of the case is based upon the fact that the dangerous instrumentality was wholly in the possession and control of the defendant, and that therefore proof of the explosion, in itself, raises a presumption of negligence sufficient to cast the burden on the defendant to overcome the presumption to defeat liability.

■ Moreover, in Soter v. Griesedieck Western Brewery Co., 200 Okl. 302, 193 P.2d 575, 576, 4 A.L.R.2d 458, we held:

"A bottling company is not an 'insurer' against the bursting of a bottle of beer.

\*    \*    \*    \*    \*    \*

"A bottler who sells bottled beer is not liable to a third party who is injured by a bottle which explodes upon the theory of breach of implied warranty in the absence of a showing of negligence on the part of bottler.

"The doctrine of 'res ipsa loquitur' is inapplicable to the bursting of a bottle of beer after it has passed from the bottler into the hands of third parties, where the record is silent as to how the beer is handled after it leaves the possession of the bottler."

Plaintiff's contention that defendant is liable on the ground of a breach of implied warranty, we think, is without support in this record. It may be conceded that there is an implied warranty of fitness that the product is fit for human consumption. That issue is not involved here as the plaintiff's action is predicated upon allegations that the bottle was defective or overcharged, which resulted in the explosion. Soter v. Griesedieck, supra.

To establish a prima facie case the burden was upon the plaintiff to show that the bottle which burst was under the management or control of the defendant to sustain the doctrine of res ipsa loquitur.

The rule is illustrated in the case of Lawton Coca-Cola Bottling Co. v. Shaughnessy, 202 Okl. 610, 216 P.2d 579. In that case the Bottling Company's agent placed bottles of Coca-Cola in plaintiff's icebox. Fifteen minutes later plaintiff opened the box to get a bottle of Coca-Cola for a customer and as she reached into the box a bottle exploded causing injuries to her face. The bottle of Coca-Cola which defendant's agent had placed in the icebox fifteen minutes prior to the bursting of a bottle, had not been handled either by the plaintiff or others previous to its explosion and plaintiff's injuries.

■ In the instant case, the proof is without dispute that the cases of Coca-Cola delivered prior to, or on the day of the accident, were not under the control or management of the defendant. Proof of control or management is an essential element of proof to sustain a recovery under the

doctrine of res ipsa loquitur. Texas Co. v. Jamison, 191 Okl. 283, 129 P.2d 85; Champlin Refining Co. v. George, 182 Okl. 118, 76 P.2d 895; Carter Oil Co. v. Independent Torpedo Co., 107 Okl. 209, 232 P. 419.

■ The evidence in the instant case discloses that there were four persons working at Gobby's Cafe, and that it therefore became incumbent upon plaintiff to establish that all persons handling bottles of Coca-Cola after it was delivered to the Cafe by the defendant, handled it with ordinary care.

■ The fact that an injury has occurred does not give rise to the presumption of negligence, but it is an affirmative fact for the injured party to establish in order to show that the defendant has been guilty of negligence in one or more of the acts alleged. The existence of negligence is not an ineluctable conclusion, but must be sustained to warrant a verdict and a judgment thereon. The judgment is reversed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN and WILLIAMS, JJ., concur.

WELCH, DAVISON, ARNOLD and BLACKBIRD, JJ., dissent.