**L. G. BROWN, Plaintiff,**

v.

**AARON RENTS, INC., Defendant.**

**Civ. No. 74–563–D.**

United States District Court,
W. D. Oklahoma.

June 16, 1975.

Robert J. Petrick, Oklahoma City, Okl., for plaintiff.

Clarence P. Green, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

The Plaintiff L. G. Brown owned a business building in Oklahoma City, Oklahoma. He leased the same to Defendant Aaron Rents, Inc. Plaintiff insured the building. Defendant insured its contents therein. On April 21, 1973 during the term of the lease, a fire occurred in the building causing substantial damage to both the building and its contents. Plaintiff collected $88,656.00 from his insurance carrier. The parties agree that after the fire the building was repairable and Plaintiff alone made an election not to repair it but to demolish the same.

Plaintiff sues herein to recover from Defendant the amount of $108,625.00 on the assertions that the fire was caused by the negligence of Defendant and that said fig-ure represents the amount of his loss. Plaintiff brings suit for himself, and by reason of subrogation, as Trustee for his insurance carrier who paid him the above stated amount as a result of the fire. Plaintiff asserts that the fire was caused by a lighted cigarette setting fire to a stack of furniture pads in the building and that the lighted cigarette causing the fire was somehow put on the stack of furniture pads by an employee of the Defendant. Plaintiff also asserts that the doctrine of *res ipsa loquitur* is applicable herein in connection with his burden to establish negligence on the part of the Defendant. The Plaintiff agreed at the trial that the measure of damages in this matter is the cost to restore the damaged building after the fire.

The Defendant defends on the basis that the lease between the parties contained an exculpatory clause excusing Defendant of liability for any loss by fire, even a fire caused by its own negligence; that the facts of this case do not permit the application of the *res ipsa loquitur* doctrine for the reason that there is no evidence to show that the cause of the fire, namely a lighted cigarette, was under the exclusive control of the Defendant at the time of the incident; and that otherwise the Plaintiff cannot and has not established negligence on the part of the Defendant in causing the fire. Defendant agrees that the measure of damages would be the cost to restore the building but asserts that under the evidence this figure is $88,656.00 rather than the amount sued for, namely, $108,625.00.

## EXCULPATION

As to Defendant's claim of no liability herein because the lease contained an exculpatory clause, the lease provision relied upon provides as follows:

"Lessee agrees to return the leased premises to Lessor at the expiration or prior termination of this lease in as good condition and repair as when first received by Lessee, natural wear and tear, depreciation, damage by storm, fire, lighting, earthquake or other casualty or unavoidable occurrence excepted."

Defendant also refers to other provisions in the lease which it contends are relevant to the exculpatory clause issue. These include a clause stating that the Defendant was to use the premises to sell and rent furniture, another clause providing for termination of the lease in the event the premises were destroyed by fire or other casualty and a clause which provided that Plaintiff would maintain fire insurance on the building and Defendant would carry insurance on the contents.

Our Circuit in *Mohawk Drilling Company v. McCullough Tool Company,* 271 F.2d 627 (Tenth Cir. 1959) and *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709 (Tenth Cir. 1974) has held that under Oklahoma law exculpatory clauses (whereby one by agreement is not liable for his own acts of negligence) are not favored in the law, are strictly construed, and will not be interpreted to exclude exemption from negligence as a matter of law unless an intent to do so is shown by clear, definite and unambiguous language.[1] 15 ALR 3d § 786 is a recent annotation entitled, "Validity, Construction, and Effect of Provision of Lease Exempting Landlord or Tenant from Liability on Account of Fire." In the summary section of this annotation at page 792, the following is stated:

" . . . Where there is explicit language in the clause that the exemption applies to fires negligently caused by the landlord or his employees, this is conclusive. On the other hand, where the clause is not explicit, the decisions on whether it nevertheless exempts the landlord or the tenant from liability for fire due to his own respective negligence are divided, depending on whether the language of the lease and the surrounding facts indicate that such was the intention of the parties."

The Court considered the question of whether Defendant was protected by an exculpatory clause in the lease in Defendant's Motion For Summary Judgment. The Court concluded then and concludes now that the provisions of the lease do not explicitly except or exempt the Defendant from liability for a fire caused by its own negligence. The Court did not grant summary judgment as requested by Defendant, and in view of the above citation in 15 ALR 3d § 786 stated that evidence would be received with reference to the intent of the parties on the matter of whether it was understood and agreed between the parties that Defendant was to be exempt from liability for a fire caused by its own negligence. The Court has heard the evidence of the parties on this point. As to the Plaintiff the evidence was to the effect that he had his attorney prepare the lease, that he did not understand the meaning of the above-quoted provision of the lease and that he recalled no discussions with anyone with reference to the question whether the Defendant would be excused from liability for a fire which damaged or destroyed the premises and which was caused by Defendant's own acts of negligence. The Defendant attempted by its evidence to show that it was Defendant's intent that it be excused from damage by fire caused by its own negligence, but pointed to no discussions between attorneys or parties with reference to this particular point. It merely assumed that the language employed in the lease brought about this result and was unable to explain why, if this was Defendant's intent, appropriate language in the lease clearly and explicitly excusing Defendant from liability for its own acts of negligence was not insisted upon.

 It is the judgment and opinion of the Court that Oklahoma law on the matter of exculpatory clauses, as discussed in *Mohawk* and *Sterner, supra,* requires that explicit and appropriate language be utilized in an agreement if a tenant is to be excused of liability for a fire or other damage to the premises brought about by his own acts of negligence and further it is the judgment and opinion of the Court that Oklahoma

---

1. *Mohawk* also holds that under the circumstances of that case an exculpatory clause would be contrary to public policy.

law places the burden to utilize such language in an agreement upon the tenant, notwithstanding the rule that an agreement is ordinarily construed against the party preparing the same, in this instance, the attorney for Plaintiff having prepared the lease. Applying this construction of Oklahoma law, to the lease in question here, the Court finds and concludes that the lease fails to contain explicit language therein exempting or excepting the Defendant from liability for a fire or other casualty to the premises caused by the negligence of the Defendant or its agents, servants or employees. Thus, in this case the Defendant does not have the protection of an exculpatory clause or agreement excusing it from its own acts of negligence regarding a fire or other casualty affecting the building.

Moreover, if the law of Oklahoma has been incorrectly construed on this point, the Court finds and concludes from the evidence presented herein that the parties or their attorneys actually had no discussion of any kind or understanding or intent among themselves as to whether or not the Defendant would be excused from liability for damage or destruction to the premises by reason of a fire or other casualty brought about by the negligence of the Defendant itself or its agents, servants or employees.

Therefore, upon the conclusion that the terms of the lease are not explicit so as to excuse the tenant from its own acts of negligence and a further consideration as to the intent of the parties on whether they actually had an agreement and intent on this point, the Court concludes that the Defendant does not have the protection of an exculpatory agreement in this case rendering it not liable for its own acts of negligence which may have damaged or destroyed Plaintiff's building by fire on either basis.

## NEGLIGENCE

As to whether Defendant has been shown to have been guilty of negligence in causing the fire involved herein, the Court first believes that the facts of this case

warrant the application of the doctrine of *res ipsa loquitur*, though the Court considers this a rather close call. This doctrine has been recognized in Oklahoma in the case of *Champlin Refining Co. v. George*, 182 Okl. 118, 76 P.2d 895 (1938) in the following language:

"The maxim, 'res ipsa loquitur,' was defined by this court in *Muskogee Electric Traction Co. v. McIntire*, 37 Okl. 684, 133 P. 213, 215, L.R.A. 1916C, 351, as follows: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' However, before this doctrine could be invoked it was necessary for plaintiff to establish as preliminary propositions what 'thing' caused the injury and that the 'thing' causing the injury was under the control of the defendants or its servants. This was aptly expressed by the Maryland court in the leading case of *Benedick v. Potts*, 88 Md. 52, 40 A. 1067, 1068, 41 L.R.A. 478, in the following language: 'The maxim [res ipsa loquitur] does not go to the extent of implying that you may, from the mere fact of an injury, infer what physical act produced that injury; *but it means that when the physical act has been shown, or is· apparent,* and is not explained by the defendant, the conclusion that negligence superinduced it may be drawn, as a legitimate deduction of fact. * * * *Negligence manifestly cannot be predicted of [on] any act until you know what the act is.*'" (Emphasis supplied)

The parties disagree as to whether the evidence warrants the application of the doctrine of *res ipsa loquitur* in this case. The Plaintiff says that its evidence has excluded all possible sources of control of the lighted cigarette which caused the fire (according to the testimony of certain expert witnesses) except for control by an

agent, servant or employee of the Defendant, whereas, Defendant states that there is no direct evidence as to who caused the lighted cigarette to come in contact with the furniture pads and start the fire, and that it is at least possible that someone other than an employee of Defendant may have been responsible for this deed.

It is believed that the Plaintiff's evidence satisfies the requirements of *St. John's Hospital & School of Nursing v. Chapman*, 434 P.2d 160 (Okl.1967) and *Okmulgee Supply Corporation v. Hall*, 195 Okl. 481, 158 P.2d 1014 (1945). The above cases seem to hold that the requirement that the thing causing the fire, here a lighted cigarette, was under the exclusive control of the Defendant may be satisfied by circumstantial evidence which of course need not exclude every other reasonable hypothesis under *Okmulgee Supply Corporation v. Hall, supra*, and rulings of this Circuit. See *United States v. Brookshire*, 514 F.2d 786 (Tenth Cir. 1975); *United States v. Jackson*, 482 F.2d 1167, 1173 (Tenth Cir. 1973) cert. denied 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 and cases cited therein. The evidence establishes that a lighted cigarette caused the fire in this case and that it was under the exclusive control of the Defendant at the time of the loading operations at the ramp through one of its agents, servants or employees then acting within the scope of his employment. This being so, the Court holds that Plaintiff has established by a preponderance of the evidence that the fire caused by a lighted cigarette which was caused to come in contact with furniture pads by an employee of the Defendant acting within the scope of his employment at the time and that in the ordinary course of things such a fire would not happen if those who had the management of the area and operation involved here had used proper care. This affords reasonable evidence under the doctrine of *res ipsa loquitur* to the effect that the fire arose from want of care by the Defendant in the absence of explanation by the Defendant. Defendant's suggestion that a derelict may have introduced a lighted cigarette into the building through a crack between the overhead door and the wall is mere speculation and is not deemed to be a satisfactory or reliable explanation.

However, if it should be determined that the Court is making an improper application of the doctrine of *res ipsa loquitur* herein, the Court has considered whether the evidence of the Plaintiff absent the application of such doctrine is sufficient to establish negligence on the part of the Defendant proximately causing the fire involved in this litigation. In this connection the Court finds and concludes from the evidence that the Defendant for nearly four hours on the morning of April 21, 1973 through the use of approximately seven employees loaded three trucks at the overhead door ramp located at the rear of its building, to the immediate east of which were stacked the furniture pads which is the location of the start of the fire; that of these approximate seven employees, approximately three or four were smokers; that a smoking area had been set aside around or near a desk located close to the ramp and that company rules permitted smoking in the warehouse only in this location; that some of Defendant's employees during the morning of loading as above mentioned did smoke during the operation but there is no direct evidence as to whether such smoking was fully confined to the permitted smoking area or may have been accomplished elsewhere or near the stacked furniture pads; that after the loading operations were completed and the overhead door was dropped and locked and the area vacated by all employees of Defendant and the passage of approximately thirty minutes of time, the fire in the stack of furniture pads was detected; that there was no evidence of any derelicts being seen in the area throughout the morning either before or during the loading operations or after the same were completed and prior to the detection of the fire; that though there was an approximate three inch crack about three feet long between the overhead door and the wall there is no evidence that a cigarette in lighted condition was inserted through the crack by a derelict as suggested by Defendant or by anyone else at any pertinent time or any other time.

The Court therefore finds and concludes from the evidence, though circumstantial in nature, that the cause of the fire involved was due to the negligence of Defendant in that one of its employees caused a lighted cigarette to come in contact with a stack of flammable furniture pads which ignited the same and brought about the disastrous fire.

■ On reaching the above decisions, the Court finds and concludes from the evidence that the amount of recovery to which Plaintiff is entitled is the sum of $88,656.00. Plaintiff has acknowledged that it has no evidence to support a recovery in excess of $103,443.00 and has withdrawn its prayer in excess of that amount. The $88,656.00 figure is what the evidence indicates would be the cost to restore the damaged building to its previous condition not to include extras caused by new requirements of the city building code and the $103,443.00 figure is the cost to restore with the added cost of complying with new building code changes. The difference between the two figures, or approximately $14,000.00, then represents the necessary expenditure to restore the building in compliance with new building code requirements which were not required when the structure was originally built and which were not then included in the construction of the building. The Plaintiff takes the position that as the Defendant has caused this loss it should bear this added expense. Defendant disputes this as being a proper item of recovery under the evidence of this case. The Court agrees with the Defendant. The Plaintiff elected not to restore the building but to demolish the same. This election was not caused by any act as far as the evidence discloses on the part of the Defendant. The building was repairable. Thus, the extras representing said figure of approximately $14,000.00 were not in the building at the time of the fire and were not damaged or destroyed in the fire. Nor has Plaintiff been compelled to construct the same as he has elected not to restore the building. For Plaintiff to recover this figure for the reason asserted by Plaintiff would permit the Plaintiff to receive a $14,000.00 windfall as these items' were not actually damaged or destroyed in the fire and were not utilized in a restoration of the building. 23 Oklahoma Statutes § 61 provides that damages recoverable from torts (negligence) is the amount which will compensate for all detriment proximately caused thereby. 23 Oklahoma Statutes § 97 provides that damages must, in all cases, be reasonable. Thus, Plaintiff's recovery herein for all detriment caused by the fire and reasonable in nature is in the amount of $88,656.00.

Counsel for Plaintiff will prepare an appropriate judgment based on the foregoing and submit the same to the Court for signature and entry herein.