## OKLAHOMA CITY v. COLLINS-DIETZ-MORRIS CO.

No. 27681.    June 14, 1938.

Rehearing Denied July 5, 1938.

A. L. Jeffrey, Municipal Counselor, and A. P. Van Meter and Leon Shipp, Assistant Municipal Counselors, for plaintiff in error.

Tomerlin, Chandler, Shelton & Fowler and John W. Swinford, for defendant in error.

BAYLESS, V. C. J.    This action was brought in the district court of Oklahoma county by Collins-Dietz-Morris Company, a corporation, plaintiff in the trial court, defendant in error herein, against the city of Oklahoma City, a municipal corporation, plaintiff in error herein, defendant in the trial court, for damages. The parties will hereinafter be referred to as they appeared in the lower court. The plaintiff alleged that by reason of certain temporary conditions created by acts of the defendant in making a public improvement the surface storm waters following a severe rain were diverted from their natural drainage course in such a manner as to flood the basement of the building occupied by the plaintiff, damaging certain goods and merchandise stored therein. Plaintiff alleged damages in the sum of $18,171.93, and the jury returned a verdict in favor of the plaintiff for the sum of $5,000. Thereafter defendant filed its motion for a new trial, which the trial court denied, and from that judgment this appeal is taken.

The plaintiff, a wholesale grocery company, occupied a certain brick building on the south side of West First street in Oklahoma City, west of and immediately adjoining the Santa Fe Railway right of way, which runs north and south. There was no storm sewer along this right of way, and

by reason of the topography of the surrounding terrain the natural drainage of surface waters following a rain was south along both the east and west sides of the Santa Fe right of way; the tracks formed a barrier between the two drainage courses. For the purpose of ventilating the basement of said building, there were a number of windows, the lower sills of which were approximately level with the adjoining sidewalk, and the plaintiff had constructed areaways around these windows, consisting of brick and waterproof mortar; these areaways rose about two feet above the level of the sidewalk, and had been sufficient in the past to protect the plaintiff's basement from accumulations of surface waters following their natural drainage course heretofore described. However, on this occasion the water rose above these protective walls and entered the basement through the windows. The plaintiff contended on trial that the water rose above these areaways because the defendant in excavating a ditch for laying a sewer line on the east side of the Santa Fe right of way, north of First street, had stacked up certain lumber and tools and thrown up a mound of earth diverting the surface waters that would have ordinarily flowed down the east side of the right of way across the railroad tracks to the west side thereof, greatly increasing the amount of surface waters flowing on that side, and this additional amount of water resulted in the flooding of the plaintiff's basement.

In the petition filed herein the plaintiff based its cause of action upon negligence, but in the opening statement to the jury counsel abandoned this theory and proceeded to trial upon the theory that, irrespective of skill or lawfulness in performing this work, if the conditions created by the defendant in constructing this public improvement diverted the surface water into plaintiff's basement, then the defendant was liable. Thus founding its action on the eminent domain provision of the Constitution of this state. The defendant maintained that this was such an extraordinary rain that it was an act of God and the defendant was not liable for the consequences thereof, and raised several questions of law hereafter discussed.

The first assignment of error we shall consider is that the trial court erred in making certain remarks to the jury, in the absence of counsel, after submission of the case to the jury. It appears from the record that after the jury had retired to consider its verdict, and counsel for the defendant had left the courthouse, the jury was returned into open court, where the foreman asked the court the following question after reading instruction No. 8, which concerned the measure of damages:

"We want to know if we would be permitted to fix the amount of the damage, if any, at any figure we see fit, or are we restricted to the figures set up in the petition."

The court replied, in substance, that the law as to the measure of damages was set forth in instruction No. 8, that the petition was not evidence, and that the jury was to fix the amount of damages, if any, in accordance with the evidence and instructions of the court, and further advised the jury that in making these remarks the court did not intend to intimate either what the verdict should be nor the amount of damages.

Defendant relies upon section 364, O. S. 1931, which provides:

"After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given in writing and the court may give its recollection as to the testimony on the point in dispute, or cause the same to be read by the stenographer, in the presence of, or after notice to, the parties or their counsel."

In support of this contention defendant cites Osage Mercantile Co. v. Harris, 52 Okla. 78, 152 P. 408, and Roark v. McCutchan, 128 Okla. 186, 261 P. 938. In both these cases the trial judge went into the jury room and no record of the proceedings was made; however, in the case at bar the jury returned to open court and the entire proceeding is fully disclosed in the record.

While this was technically an error on the part of the trial court and one to be carefully guarded against, yet, after a careful examination of the entire record, it does not appear that it resulted in a miscarriage of justice or constituted a substantial violation of the defendant's constitutional or statutory rights. The court did not give any new instructions, but in substance merely directed the attention of the jury to instructions previously given.

Section 3206, O. S. 1931, provides:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence,

or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right."

See Woodard v. Sanderson, 83 Okla. 173, 201 P. 361; Sandusky Cement Co. v. Hamilton & Co. (6th Cir.) 287 Fed. 609.

The defendant also assigns as error the refusal of the trial court to instruct the jury that a municipal corporation is not liable for the diversion of surface waters, occasioned by construction of a public improvement, unless the municipality was doing a wrongful act or was negligent in the manner in which the work was performed. The trial court conducted the trial upon the theory that the plaintiff was seeking recovery of damages under the provisions of article 2, section 24, of the Constitution, providing:

"Private property shall not be taken or damaged for public use without just compensation."

The eminent domain provisions of the earlier Constitutions of the older states contained only the word "taken" for public use, and it was uniformly held that consequential damages were damnum absque injuria. To remedy this obvious injustice the people of the state of Illinois were the first to amend this provision by adding the words "or damaged." Other states have since followed this example. For a more complete history of this provision, see Arkansas Valley Ry. v. Witt, 19 Okla. 262, 91 P. 897; Blincoe v. Choctaw, Okla. & Western Ry. Co., 16 Okla. 286, 83 P. 903.

This court has heretofore held that consequential damages resulting from the construction of public improvements may be recovered under article 2, section 24, of the Constitution, supra. City of Muskogee v. Hancock, 58 Okla. 1, 158 P. 622; Page v. Oklahoma City, 129 Okla. 28, 263 P. 448; State Highway Commission v. Smith, 146 Okla. 243, 293 P. 1002; Chicago, etc., Ry. Co. v. Jennings, 175 Okla. 524, 53 P.2d 691; Chicago, etc., Ry. v. Larwood, 175 Okla. 96, 51 P.2d 508, and other cases cited in the foregoing decisions. Said constitutional provisions have created a right which did not exist at common law. Reardon v. City & County of San Francisco, 6 P. 317; Rigney v. Chicago, 102 Ill. 64; Stark v. Philadelphia (Pa.) 45 Atl. 678; Arkansas Val-

ley Ry. v. Witt, supra; Blincoe v. C., O. & W. Ry. Co., supra.

In St. Louis, etc., Ry. v. Matthew, 174 Okla. 167, 49 P.2d 752, the plaintiff sought to recover damages for injury to a residence caused by the operation of certain oil burning locomotives on a near-by railroad, alleging negligence in the operation of said locomotives. After finding that plaintiff had failed to prove negligence, this court held that, irrespective of negligence, the plaintiff had established certain facts proving the operation of the locomotives had damaged her property and these facts were sufficient to authorize recovery under section 24, article 2, of the Constitution. See, also, Stedman v. State Highway Commission, 174 Okla. 308, 50 P.2d 657; State Highway Commission v. Smith, 146 Okla. 243. 293 P. 1002.

If the injured party has been consequentially damaged by the construction of a public improvement, whether it was done carefully and with skill or not, he is entitled to compensation for such damage under the eminent domain provisions of the Constitution, supra. Reardon v. City and County of San Francisco, supra; Gledhill v. State (Neb.) 243 N. W. 909; Logan County v. Adler (Colo.) 194 P. 621; Jacobs v. City of Seattle (Wash.) 160 P. 299; Great Northern Ry. v. State (Wash.) 173 P. 40; Moore v. Lawrence County (Ky.) 136 S. W. 1031; Black Mountain Corp. v. Houston (Ky.) 277 S. W. 993, and decisions cited therein.

The trial court did not err in refusing to instruct the jury upon the question of negligence.

Defendant contends that "temporary condition caused by an act in the construction of the improvement" cannot be the basis of a cause of action under the eminent domain provision; "it must be the finished improvement or the operation thereof after completion" which causes the damage or the city is not liable. An examination of the case of Gledhill v. State, supra, and others in line with that decision cited herein clearly shows this statement erroneous. Moreover, we see no valid reason for holding a municipality's liability in this situation is contingent upon whether the public improvement causing the damage is completed or in a temporary condition in the process of construction when the damage occurred. The jury by its verdict found the temporary conditions created by defendant during the construction of the improvement were the cause of the plaintiff's dam-

age, and consequential damages resulting from a temporary condition in the construction of a public improvement may be recovered under article 2, section 24, of the Constitution. Chicago, etc., Ry. Co. v. Prigmore, 180 Okla. 124, 68 P.2d 90; Chicago, etc., Ry. Co. v. Larwood, supra; Pittsburg Ry. Co. v. Kearns (Ind.) 108 N. E. 973; McKeon v. N. Y. Ry. Co. (Conn.) 53 Atl. 656; In re Chatham Street, 16 Pa. Super. Ct. 103; Mintzer v. Hogg (Pa.) 43 Atl. 465; Great Northern Ry. Co. v. State, supra; Gledhill v. State, supra.

However, in the reply brief to the rejoinder brief counsel for defendant restate this proposition above discussed in the following language: "* * * either the improvement in its completed stage, or the construction of the improvement itself, caused the damages." As a generalization this statement may be correct, but we cannot accept the strained interpretation counsel seek to place thereon by asserting that piling up the excavated earth is not a necessary consequence of digging a sewer ditch. It was certainly as much a necessary consequence of constructing the improvement as the use of dynamite was in excavating the sewer ditch in City of Muskogee v. Hancock, supra, and in Tibbets & Pleasant v. Benedict, 128 Okla. 106, 261 P. 551, or in temporarily tearing up the sidewalk, digging the ditch, and erecting mounds of earth in front of the store in the case of Chicago, etc., Ry. Co. v. Larwood, supra, wherein this court allowed recovery for the consequential damages suffered.

It is true there is a conflict in the evidence, but there is ample evidence supporting the verdict of the jury. Where a verdict has been returned and a judgment rendered upon such verdict and the evidence is conflicting, this court on appeal will not weigh the evidence to determine where the preponderance thereof lies, if there is evidence reasonably tending to support the verdict. Eughlin v. Pittsburg County Ry. Co., 169 Okla. 106, 36 P.2d 32; Tri-State Supply Co. v. Rodgers, 174 Okla. 628, 52 P.2d 39.

An examination of the other assignments of error and the remaining instructions fails to disclose any substantial error.

The judgment of the trial court is affirmed.

RILEY, CORN, GIBSON, and HURST, JJ., concur.